**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| J. GREGORY LAUN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 1:06-CV-246 |
| | ) | |
| CORAL L. LAUN, REX A. MILLER and | ) | |
| UNIDENTIFIED JOHN DOES[1], | ) | |
| | ) | |
| Defendants. | ) | |


**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court for resolution of cross-motions for summary judgment.

Plaintiff J. Gregory Laun ("Gregory" or "plaintiff") filed a Motion for Partial Summary

Judgment as to Liability on August 27, 2007. On that same date, defendants Coral L. Laun and

Rex A. Miller ("Coral" and "Rex," or "defendants") filed a Motion for Summary Judgment.

Briefing on the motions was completed on October 22, 2007. For the reasons discussed in this

Order, the plaintiff's motion for summary judgment is GRANTED in part and DENIED in part,

and the defendants' motion for summary judgment is DENIED.

---

[1] In his Complaint (Docket at 1) Gregory states that the unidentified John Doe defendants are individuals who may have "participated in the wrongdoing as alleged" in his pleading. The record reflects that no additional named parties been identified in this action. Therefore, the only litigants in this action, and the only parties involved in the pending motions for summary judgment, are plaintiff J. Gregory Laun and defendants Coral Laun and Rex Miller.

## FACTUAL BACKGROUND

This case involves a trust fund known as the Donald Miller Family Trust (the "Trust").[2] Donald Miller established the Trust in November of 1997. The beneficiaries of the Trust included Mr. Miller's two children, Coral Laun and Rex Miller (the defendants in this case); Coral's two daughters, Alexandria Laun and Susan Laun; Coral's son Gregory (the plaintiff in this case); Brenda Miller (defendant Rex Miller's wife); and Rex Miller's two sons, Courtney Miller and Collin Miller. The Trust was established by attorney Scott Wagenblast ("Wagenblast"), who served as the Trustee for several years. Defendants Coral Laun and Rex Miller became Co-Trustees in October of 2001. Donald Miller died in January of 2002.

At the time of its creation the only asset in the Trust was a universal life insurance policy on the life of Donald Miller issued by the Life of Virginia Life Insurance Company. In early 2000, Donald Miller purchased a deferred variable annuity through Golden American Life Insurance Company with an initial premium in the amount of $695,846.67 (the "ING Annuity").[3]

---

[2] The court's recitation of the factual background in this case was compiled from the facts as presented by both sides in their respective briefs. In their reply brief in support of their own motion, the defendants "[Rex] and Coral respectfully request that the Court strike and otherwise disregard any statements contained in the statement of facts [presented by plaintiff] which are not supported by any [evidentiary] citation." Rex A. Miller and Coral L. Laun's Reply to Gregory Laun's Memorandum in Opposition to Motion for Partial Summary Judgment ("Defendants' Reply to Plaintiff's Opposition"), Docket at 51, p. 3. The defendants claim that the facts underlying this case, as recited by the plaintiff, contain "significant argument and opinion[.]" and should therefore be stricken and/or not considered by the court. *Id*. The court has reviewed in detail all the briefs submitted by both sides in this case and finds that both the plaintiff and the defendants are guilty of peppering their recitation of the facts with argument and opinion (the defendants perhaps slightly less so). The court declines the defendants' invitation to strike any portion of the plaintiff's briefs and instead will discuss the facts as presented by each side in the context of the legal issues they raise.

[3] This Trust asset is referred to by the parties and the court as the "ING Annuity" because sometime after it was purchased Golden American Life Insurance Company apparently

The Trust was named the beneficiary of the annuity proceeds upon the death of Donald Miller.

After Donald Miller died, Coral and Rex distributed certain proceeds from the Trust to the eight named beneficiaries. Specifically, in May of 2002, a few months after Donald Miller's death, the defendants distributed to each of the eight beneficiaries (themselves included) a 1/8th share of the Life of Virginia universal life insurance policy. Plaintiff's share of that distribution was slightly more than $46,000. That distribution is not at issue in this case. Coral and Rex did not, however, distribute any of the proceeds of the ING Annuity, which amounted to $610,303.48. A check in that amount, made payable to "DW Miller Fm Trst" and dated July 15, 2002, was mailed to the defendants. On or about September 9, 2002, the defendants opened a bank account under the name "Donald W. Miller Family Trust" at the First National Bank of Monterey and deposited the ING Annuity proceeds. Thereafter, they split those proceeds equally between the two of them. On March 21, 2007, Coral and Rex issued a check to Gregory in the amount of $104,880.23, which represented his 1/8th share of the ING Annuity ($76,287.94) plus interest from July 15, 2002 (the date the original ING Annuity check was issued to the Trust) to the date of payment. Gregory asserts that this late payment, which he is quick to point out was made nine months after this lawsuit was filed and almost five years after the ING Annuity check was first issued, demonstrates that Coral and Rex converted the ING Annuity proceeds and only distributed them in the proper manner after litigation ensued. Coral and Rex, on the other hand, maintain that the delay in distributing these proceeds, and their admitted retention of the funds for themselves at first, resulted not from any conversion, fraud or

---

became affiliated with ING Variable Annuities. The Golden American annuity and the ING Annuity are one and the same.

other malfeasance, but only from their confusion about what was to be done with those proceeds.

By way of a letter dated October 30, 2001, Coral and Rex informed the other Trust beneficiaries that they were entitled to receive a gift of $10,000 each provided they visited Donald Miller for a minimum of two hours.  Coral and Rex stated in that letter that they were authorized to dispense these gifts as "co-trustees" of the Trust.  All of the other named beneficiaries availed themselves of the opportunity as outlined in the letter and received their payment.  Gregory did not receive this $10,000 gift.  Donald Miller died on January 2001, before the March 1, 2002 "deadline" for the visit as set out in the letter.  Gregory claims that he is still entitled to this payment of $10,000 because Coral and Rex committed conversion and/or fraud and/or breach of fiduciary duty by failing to make this distribution to him.

In August of 2000 Donald Miller forwarded $80,000 to Wagenblast, telling his attorney that he (Miller) wanted to distribute a gift in the amount of $5,000 to each of the eight beneficiaries.  Wagenblast sent a check in that amount to each beneficiary.  The remaining $40,000 remained in the trust account of Wagenblast's law firm.  According to Wagenblast and the defendants, that sum was earmarked for payment of premiums on Donald Miller's life insurance policy.  Later that same month, Donald Miller suffered a stroke.  As a result, Coral and Rex began serving as attorneys-in-fact for Donald Miller pursuant to a Durable Power of Attorney executed by Donald in 1994.  Also as a result of Donald Miller's stroke, attorney Wagenblast, who was still serving as Trustee of the Trust, determined that it would benefit the Trust to cease funding the universal life policy.  Accordingly, he returned the sum of $40,000 that Donald Miller had forwarded to him (the remaining half of the $80,000) so the money could be used to pay medical expenses incurred by Miller following the stroke.  Gregory claims he is

entitled to a 1/8th share of this money, based again on his allegations of conversion, breach of fiduciary duty and/or fraud on the part of Coral and Rex.

In his Complaint, Gregory asserts several claims arising out of the events before and after his grandfather's death.  Gregory alleges as follows:

1.  Count I ("Civil Conversion and Damages Pursuant to Ind. Code § 34-24-3-1"): Gregory claims that Coral and Rex are liable for converting the proceeds of the ING Annuity to themselves rather than distributing them to the Trust beneficiaries in equal shares.  He seeks treble damages and attorney's fees under this Indiana State statute (known as the Crime Victim's Relief Act).

2.  Count II ("Accounting"): Gregory asserts a claim for an accounting regarding the Trust and the various Trust transactions.  He seeks a court order directing the defendants to provide such an accounting.

3.  Count III ("Fraud and Constructive Fraud"): Gregory asserts that Coral and Rex committed fraud and constructive fraud by allegedly representing that all funds held in the Trust were properly distributed according to its terms when they knew that this was not the case.  He seeks damages (including punitive damages) and attorney's fees.

4.  Count IV ("Breach of Fiduciary Duty"): Gregory claims that Coral and Rex, in their capacities as Trustees of the Trust, breached their fiduciary duty to him as a result of certain actions they allegedly took or failed to take in administering the Trust.  He seeks damages (again including punitive damages) and attorney's fees.

See Complaint, Docket at 1.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir. 1988); *Guenin v. Sendra Corp.*, 700 F. Supp. 973, 974 (N.D. Ind. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960 (1983).

In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511. Summary judgment is particularly inappropriate for resolving issues involving intent or motivation. *Connor v. Reinhard*, 847 F.2d 384, 393-94 (7th Cir.), *cert. denied*, 488 U.S. 856 (1988).

## DISCUSSION

The court held a pretrial conference in this case on June 18, 2007. *See* Docket at 31. At that hearing, the issues of the plaintiff's ability to pursue treble damages and attorney's fees as well as the defendants' contention that some or all of the Plaintiff's claims might be barred by an applicable statute of limitations were raised and discussed. The court determined that these issues required briefing and should be resolved, to the extent possible, prior to trial. The parties were directed to file the summary judgment motions that are now before the court.

In his motion for summary judgment on the issue of liability only, Gregory argues that he is entitled to judgment in his favor as a matter of law and that he is entitled to recover treble damages and attorney's fees (and perhaps other damages as well–such as various costs).  Motion of Plaintiff, John Gregory Laun, for Summary Judgment as to Liability ("Plaintiff's Motion for Partial Summary Judgment"), Docket at 45.  Coral and Rex argue in their response that since Gregory was eventually paid his 1/8th pro rata share of the ING Annuity proceeds, with interest, his claim for exemplary (i.e., treble) damages was extinguished.  Rex Miller and Coral Laun's Response to Gregory Laun's Motion for Summary Judgment ("Defendants' Response to Plaintiff's Motion"), Docket at 49.  The defendants further maintain that Gregory's claim for attorney's fees was likewise extinguished as a result of the payment.  *Id*.  In the alternative, they argue that if Gregory recovers any attorney's fees they should be limited to fees incurred through March 22, 2007, the date on which his pro rata share was ultimately paid in full, rather than attorney's fees that would be incurred through trial.  Coral Laun and Rex Miller's Motion for Summary Judgment ("Defendants' Motion for Summary Judgment"), Docket at 43.

Also in their motion for summary judgment, Coral and Rex argue that Gregory's "claims for breach of fiduciary duty and conversion as they relate to the $10,000 gift offered in October 2001 and the $40,000 returned to Donald Miller in approximately December 2000 are barred by the applicable two (2) year statute of limitations."  *Id*.  Finally, Coral and Rex argue that Gregory's "claims for constructive fraud and actual fraud as to the $10,000 gift and the $40,000 returned to Donald Miller . . . are also subject to dismissal as the undisputed facts do not support such claims."  *Id*.

**I.  Plaintiff J. Gregory Laun's Motion for Summary Judgment as to Liability.**

**A.  Treble Damages and Attorney's Fees.**

As stated above, one of the issues raised by the plaintiff's motion for summary judgment is whether he is entitled, if he succeeds at trial, to recover treble damages and attorney's fees for not having received payment of his 1/8th share of the ING Annuity proceeds when they were paid to the Trust in 2002.  Gregory contends that he should be permitted to pursue his claim for treble damages and attorney's fees notwithstanding the fact that he eventually received payment in full.[4]  The defendants contend that since Gregory was eventually paid his 1/8th share of those proceeds, along with interest from the date the annuity check was issued, he is barred from seeking treble damages in this action.  They also argue that he is not entitled to recover attorney's fees or, in the alternative, that any such attorney fee award should be limited in scope.

The plaintiff's claim for relief for the alleged conversion of the ING Annuity proceeds is based on I.C. § 34-24-3-1, the Crime Victim's Relief Act ("the Act").  That statute provides, in relevant part, as follows:

> If a person suffers a pecuniary loss as a result of a violation of [various Indiana criminal statutes], the person may bring a civil action against the person who caused the loss for the following:
>
> (1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.
> (2) The costs of the action.
> (3) A reasonable attorney's fee.
> (4) Actual travel expenses. . . .
> (5) A reasonable amount to compensate the person suffering loss for time . . .
> (6) Actual direct and indirect expenses incurred by the person suffering loss to compensate employees and agents for time. . . .

---

[4]  "Payment in full," that is, of his 1/8th share of the Annuity proceeds.  It is uncontested that Gregory has *not* been paid any attorney's fees.

9

(7) All other reasonable costs of collection.

Based on this wording in the statute, Gregory argues that he is entitled to recover treble damages

and attorney's fees from Coral and Rex.  Legal Memorandum in Support of Motion of Plaintiff,

J. Gregory Laun, for Summary Judgment as to Liability ("Plaintiff's Memorandum in Support"),

Docket at 46.  Coral and Rex argue that Gregory's claim for treble damages is precluded since he

was ultimately paid in full for his share of the ING Annuity proceeds.  Rex Miller and Coral

Laun's Response to Gregory Laun's Motion for Summary Judgment ("Defendants' Response in

Opposition"), Docket at 49.

Gregory cites and discusses four cases that he argues support his position that he may

recover treble (and any other) damages from the defendants notwithstanding the fact that he was

eventually paid his share of the ING Annuity proceeds.  Plaintiff's Memorandum in Support, pp.

17-19.

As for the cases Gregory presents, two of them are cases (as he concedes) in which courts

found that plaintiffs were *not* entitled to recover damages under the Act since they had failed to

prove that they had suffered pecuniary loss in the first place.  *Id.*, p. 17 (citing *Bridgeforth v.*

*Thornton*, 847 N.E.2d 1015 (Ind.App. 2006) and *McLemore v. McLemore*, 827 N.E.2d 1135

(Ind.App. 2005)).  Gregory cites these cases in an attempt to highlight what he claims are the

factual differences between them and the instant case.  *Id*.  He points out that the courts in

*Bridgeforth* and *McLemore* found that the respective plaintiffs had not proved that they had

actually incurred any damages and therefore were not entitled to pursue damages under the Act.

He then argues that "[i]n the instant case, there was an unquestioned deprivation of the use of

plaintiff's property for a period of years, and a failure to even let the plaintiff know of its

existence." *Id*.  This portion of Gregory's argument is unpersuasive.  He acknowledges in his

brief that neither the *Bridgeforth* case nor the *McLemore* case is on point.  Rather, he argues that

his own situation is so clearly and obviously different from either of the plaintiffs in those two

cases that it only follows that he should be able to pursue damages under the Act.  This leap of

logic cannot support Gregory's argument.

The next two cases cited by Gregory are, as he claims, closer to the point.  In *RJH of*

*Florida, Inc. v. Summit Account and Computer Services, Inc.*, 725 N.E.2d 972 (Ind.App. 2000),

the plaintiff was awarded a judgment in the trial court, as well as an award of attorney's fees.

The appellate court upheld the judgment.  The plaintiff then returned to the trial court to seek

appellate attorney's fees.  However, before his motion for appellate fees was ruled on, plaintiff

(who had received payment of the underlying judgment) filed a release of judgment.  The

defendant then sought to have plaintiff's motion for appellate fees dismissed as a result of the

release and the trial court granted the requested dismissal.  As Gregory points out, "[t]he court of

appeals reversed, finding that the release of judgment did not operate to relieve defendant of its

obligation under the Act for appellate attorney fees which are also mandatory under the Act."

*Id*., p. 18 (citing *RJH*, 725 N.E.2d at 974).  Gregory states that he has never given any type of

release to Coral or Rex following the payment of his share of the ING Annuity proceeds and has

"not waive[d] his right to pursue the remedies available to him under the Act by payment of the

[D]efendant[s] of a portion of what is owed under the Act."  *Id*.  Gregory's point is that if Coral

and Rex had never paid him a dime, and then he prevailed against them for his share of the ING

Annuity proceeds, he would be able to pursue all other damages allowed under the Act.  The fact

that his share of the proceeds was in fact paid, he maintains, does not preclude him from

pursuing further damages as enumerated in the Act.[5]

Gregory also cites the case of *Blankenship v. McKay*, 534 N.E.2d 243 (Ind.App. 1989),

*reh. denied*.  In that case, the court held that the plaintiff's claim for damages under the Act was

not barred even though the defendant had been ordered to make full restitution as a result of a

criminal proceeding for embezzlement.  The court concluded that the plaintiff "parted with no

consideration" as a result of the criminal court's restitution order and the plaintiff was allowed to

pursue additional damages pursuant to the Act.  Gregory argues that "in this action, there was no

consideration exchanged for defendants' payment of a prior obligation.  And the payment of the

obligation . . . was not contingent on a release of any of the plaintiff's remaining claims.  As such

. . . Greg Laun cannot be found to have given up his statutory right to relief simply because the

defendant [sic] has paid a fraction of the damages plaintiff is allowed [to] pursue under the Act."

Plaintiff's Brief, p. 18.  Gregory also points out that not only has he not received treble damages

(assuming he can prove he is entitled to them), he has also not received any attorney's fees or

litigation costs, even though the defendants did not pay him the 1/8th share of the ING Annuity

proceeds until well after this lawsuit commenced.

Gregory also argues that there is a public policy reason for permitting him to pursue

additional damage amounts under the Act.  *Id*., pp. 19-20.  He maintains that "[t]he Crime

Victim's Relief Act imposes penalties beyond simply tort or contract remedies and is typical of

statutes which serve a deterrent effect on the commissions of . . . violations" [such as those

---

[5]  Again, Gregory stresses that even though he was eventually paid his share of the
Annuity proceeds with interest, this payment did not occur until after this lawsuit was well under
way and several years after Coral and Rex first received the ING Annuity payment.  He contends
that this strengthens his argument that he should be permitted to pursue treble and other damages
under the Act.

alleged against Coral and Rex].  According to Gregory, "[i]t is good public policy to not allow

those who commit these acts to avoid the penalty provisions [of the Act] simply by paying the

pecuniary damages at the eleventh hour, or in claiming they had a good faith belief that their

actions were permissible."  *Id*., p. 19.  Gregory attempts to support this public policy argument

by citing the case of *Naugle v. Beech Grove City Schools*, 864 N.E.2d 1058 (Ind. 2007).  In that

case, the Indiana Supreme Court held that there was no "good faith" defense to a violation under

the Indiana Wage Payment statute.  The court reasoned that the penalty provisions in the Wage

Payment statute, which include liquidated damages and attorney fees, have a deterrent effect on

employers who might otherwise violate the statute, and that "'the plain language of the statute

and the public policy behind it compel us to conclude that there is no good faith exception to the

Wage Payment Statute.'"  *Id*., p. 20 (quoting *Naugle*, 864 N.E.2d at 1065-1066).

The defendants, in their response brief, do not address the *RJH of Florida* or the

*Blankenship* cases cited by Gregory.  Instead, they maintain that "there is case law on point

under the Indiana Crime Victim's Relief Act wherein the court specifically found that where the

converted property is returned, the damages for the deprivation of the use of the property is [sic]

measured by the fair rental value for the period of the conversion."  Defendants' Response in

Opposition, p. 9 (citing *Nance v. Miami Sand & Gravel, LLC*, 825 N.E.2d 826 (Ind.App. 2005)

and *Coffel v. Perry*, 452 N.E.2d 1066 (Ind.Ct.App. 1983)).  The defendants do not discuss the

facts in either of these cases and they employ a measure of liberty in their statement of the

holdings expressed in them.  For example, in the *Nance* case, the plaintiff was a mining

company.  The company brought suit against a sand and gravel company and two of its

principals, alleging that the defendants interfered with the operation of a mine.  One of the issues

in the case involved an alleged conversion of $524 by the defendants.  The plaintiff claimed that

the defendants converted that amount by placing the funds into one of their own bank accounts.

The funds were returned to the plaintiff in one week.  The trial court held that the evidence

suggested the defendants knew it was improper for them to deposit the money into their own

account and held them liable for that amount in damages.  The court of appeals reversed the trial

court on that issue, holding that "'[w]here converted property is returned, damages for the

deprivation of the use of the property may be measured by the fair rental value for the period of

conversion.'" *Nance*, 825 N.E.2d at 836 (citing *Coffel*, 452 N.E.2d at 1069)).  The court further

explained that "'fair rental value'' where money is concerned would be interest.  We agree with

[the defendants] that the trial court erred in holding them liable to [the plaintiff] for the entire

$524 they improperly deposited [into their own account] because that money was returned to

[the plaintiff].  Any interest that would have accrued during the time of the conversion would be

the proper measure of damages." *Id.*  Based on that language, Coral and Rex maintain that they

are not liable for any additional damages (except, perhaps, for some amount of attorney's fees)

since they eventually paid Gregory his money *with* interest.  One of the problems with this case

is that the appellate court made no mention at all of I.C. § 34-24-3-1 when discussing the issue of

the conversion of the $524.  Rather, the court was discussing only the proper calculation of

*actual* damages.  The issue of treble damages under the statute was not discussed.  Later in its

opinion, the appellate court did reference the statute, but only in the context of an award of

attorney's fees and costs.  The court concluded that the plaintiff company was entitled to recover

a certain amount of attorney's fees and costs as a result of the defendants' conversion and cited

I.C. § 34-24-3-1 as the basis for such an award.  *Id.* at pp. 838-839.  But this case did *not* discuss

14

the issue of exemplary damages under the statute.  The fact that the case stands for the proposition that a return of converted funds, with interest thereon, is the proper way to measure *actual* damages for a conversion does not, as Coral and Rex argue, mean that an award of exemplary (i.e, treble) damages is prohibited or rendered moot by the eventual payment of the actual damages.

Similarly, the *Coffel* case cited by Coral and Rex also does not stand for the proposition that the return of converted property negates a claim for treble damages under the Crime Victim's Relief Act.  In *Coffel*, the court reiterated that "[g]enerally, damages for conversion of property are measured by the fair market value of the property at the time of conversion . . ." and that "damages are mitigated by the return of the property to the owner . . . ."  *Coffel*, 452 N.E.2d at 1069.  But again, this portion of the *Coffel* case addresses only the proper measure of *actual* damages, not the imposition of *exemplary* damages.  As to the issue of exemplary damages, the jury in *Coffel* found that the defendant believed he had a right to retain certain property of the plaintiff in satisfaction of another debt.  Therefore, the jury found that the defendant was not liable for criminal conversion and did not award exemplary damages in the case.  The trial court later granted the plaintiff's motion for judgment on the evidence and reversed the jury's finding on the issue of exemplary damages, awarding such damages to the plaintiff.  The court of appeals reversed, reasoning that the jury's determination that the defendant did not intentionally retain the plaintiff's property, and therefore no award of exemplary or punitive damages was warranted, was not erroneous.  The appellate court reversed the trial court and ordered it to reinstate the jury's verdict.  The clear implication of this holding is that if a finding of intentional conversion is supported by the evidence, an award of exemplary damages in addition to actual

damages may be warranted.

The *Coffel* case does help resolve one issue in the present case, however.  As stated above, Gregory has asserted that there is no good faith exception to an award of exemplary damages under I.C. § 34-24-3-1.  But the *Coffel* case refutes this argument.  The appellate court found that the jury's determination in *Coffel*–that the defendant did not wrongfully and intentionally convert the plaintiff's property–supported its conclusion *not* to award exemplary damages.  This clearly implies that a good faith exception does exist.  This point is supported in other cases, also.  In *Citizen's Nat. Bank of Evansville v. Johnson*, 637 N.E.2d 191 (Ind.App. 1994), the court held that "the award of damages above actual damages under I.C. § 34-4-30-1 is within the sound discretion of the trial court. . . . We hold that the trial judge has discretion over whether to award exemplary damages, as well as discretion over the amount of those damages." *Id*., at 195 (internal citation omitted).[6]  In the *Citizen's Nat. Bank* case, the court noted that "the trial court implicitly found that the nature of Citizens' conduct *was not so heinous as to require exemplary damages.  Id.* (italics added).  *See also*, *Schrenger v. Ceasars Indiana*, 825 N.E.2d 879, 884 (Ind.App. 2005) ("the decision to award damages in excess of actual damages pursuant to I.C. § 34-24-3-1 rests within the discretion of the trial court and there is no absolute entitlement to an award of treble damages.").  Accordingly, Gregory's argument that there is no good faith exception to an award of treble damages under the statute is without support.

Gregory also argues that he should be permitted to pursue a claim for attorney's fees related to his eventual recovery of his portion of the ING Annuity funds.  As stated above, the

---

[6] Indiana Code Section 34-4-30-1 was repealed and replaced by the current version, I.C. § 34-24-3-1.  The language of the former statute was virtually identical to the language in the current version.

defendants argue that this claim was also extinguished as a result of their payment of the funds to Gregory.  In the alternative, they argue that any recovery for attorney's fees should be limited to fees incurred up to March 22, 2007, the date on which Gregory received his payment.  The defendants' arguments concerning attorney's fees suffer the same fate as their argument concerning treble damages, and for the same reasons.  The cases cited by the defendants do not support the proposition that payment of actual damages (along with all interest) extinguishes a plaintiff's claim for attorney's fees under I.C. § 34-24-3-1.  The defendants' argument that Gregory's attorney's fees claim should be limited in scope to those fees incurred as of March 22, 2007, likewise fails.  Gregory has yet to present to a jury his claim for damages under the Act.  Should he succeed in his claims, the statute expressly states that he is entitled to seek attorney's fees related to those claims.  The attorney's fees Gregory incurred as of March 22, 2007, were those fees associated with the recovery of his *actual* damages under the Act.  Since Gregory is not precluded from pursuing exemplary damages under the Act, he is also not precluded from pursuing attorney's fees he incurs in furtherance his remaining damage claim.

This court concludes, then, that Gregory's motion for summary judgment as to liability should be granted with respect to the issue of his ability to present his claim for treble damages and attorney's fees to the jury.

**B.  Liability Regarding the ING Annuity Funds.**

Gregory also argues in his motion that he is entitled to summary judgment on the issue of Coral's and Rex's liability to him for damages associated with the ING Annuity funds, which would leave only the matter of damages to be presented to the jury.  Gregory states that "[f]or purposes of his Motion, Plaintiff has identified two criminal acts committed by the

17

defendants–Theft under Ind. Code § 35-43-4-2, and [Conversion] under Ind. Code § 35-43-4-3."
Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment as to Liability
("Plaintiff's Reply"), Docket at 52, p. 2.  Gregory correctly asserts that in a civil action under
I.C. § 34-24-3-1, a plaintiff need only prove by a preponderance of the evidence that the
defendants are guilty of violating a criminal statute in order to obtain recover under the Crime
Victim's Relief Act.  Plaintiff's Memorandum in Support, p. 12 (citing *Manzon v. Stant Corp.*
138 F.Supp.2d 1110, 1115 (S.D.Ind. 2001) and *Gilliana v. Paniaguas*, 708 N.E.2d 895, 899
(Ind.App. 1999)).  Gregory lists the following acts and/or omissions of the defendants as
supporting his argument that they committed theft and/or conversion and are therefore liable to
him as a matter of law:

> In March of 2002, defendants signed the ING sworn "Claimant Statement" as
> trustees of the Trust.

> In approximately September, 2002, defendants endorsed the ING check in the
> amount of $610,303.48 made payable to the Donald Miller Family Trust and to
> the defendants as trustees.

> In September, 2002, defendants opened a bank account set up in the name of the
> Trust and placed the ING Annuity funds in that bank account.

> In April of 2003, defendants filed tax returns for the trust and included income
> produced from the ING annuity as income of the trust.

> On September 15, 2005, defendants identified the ING funds as an asset in the
> verified accounting of the Trust, and also confirmed that they had distributed
> those funds only to themselves.

> On March 22, 2007, more than eight months after the filing of [this] complaint,
> defendants tendered payment of Greg Laun's share of the ING trust money.

> Any one of the events is conclusive proof of the 'knowledge' requirement, and
> any single event is sufficient to support a finding as a matter of law that the
> defendants committed a predicate crime supporting summary judgment on
> liability.

Plaintiff's Reply, p. 7 (internal evidentiary citations omitted).; *see also,* Plaintiff's Memorandum in Support, p. 13.

Coral and Rex argue, in essence, that even of they did commit some or all of the acts alleged by Gregory, they did so as a result of mistake and confusion rather and not as the result of any intent to commit theft or conversion of any of the Trust funds.  The defendants' position on this important point is consistent throughout their briefs.  They claim, for example, that "[i]mmediately after being appointed Trustees, [Rex] and Coral were confused regarding the distinction between Donald Miller's individual property and property of the Donald Miller Family Trust."  Defendants' Response in Opposition, Docket at 49, p. 2.  For example, Coral and Rex admit that when they sent out letters to Donald Miller's beneficiaries in October of 2001 telling them that they were entitled to monetary gifts if they visited with Donald, they represented themselves in those letters as "Trustees of the Donald Miller Family Trust."  *Id.* However, both of them stated in affidavits that they were merely confused about their true roles at that time, which were as agents operating under a power of attorney.  *Id.*; Affidavit of Rex Miller, ¶ 6; Affidavit of Coral Laun, ¶ 6.  Both Rex and Coral also state in their respective affidavits that they believed that the ING Annuity money was intended to be divided only between the two of them and not distributed to the eight trust beneficiaries the way the Virginia life insurance policy was.  *Id.*; Miller Aff., ¶ 11; Laun Aff., ¶ 9.  The confusion Coral and Rex claim they experienced was, according to them, memorialized in a letter Rex wrote to attorney Wagenblast on July 8, 2002.  *Id.*, p. 3.  In that letter, Rex Miller asked Wagenblast to explain the exact terms of the Trust and what constituted Trust property.  *Id.*, Exhibit 3. Specifically, Rex wrote that ". . . it seems like there are ambiguous statements in the trust as to what is to be

divided eight ways. . . . What exactly are the terms of the trust and Dad's assets?"  *Id.*

Coral and Rex also make the following assertions concerning their actions:

1.  The ING Annuity claim form was already filled out when they received it and they simply signed it and sent it back;

2.  They opened a separate bank account to deposit the ING Annuity funds only as a matter of geographical convenience given where they each lived at the time;

3.  When they eventually discovered that the ING Annuity funds were property of the Trust, they "did not immediately share the ING Annuity proceeds with the other beneficiaries of the Trust for several reasons."  These reasons included the fact that they "did not recognize the handwriting on the beneficiary designation form and wanted to investigate who had written the designation and why.  Secondly, sharing the ING Annuity proceeds with the beneficiaries of the Trust was contrary to their understanding of their father's intentions."

*Id.*, pp. 3-6.

For these reasons, which are discussed in greater detail in the defendants' briefs, Coral and Rex maintain that they did not commit a predicate act that would render them liable to Gregory or, that a genuine issue of material fact exists on this issue that only a jury can resolve. *Id.*, p. 10.

Gregory's list of acts by Coral and Rex may very well provide a reasonable evidentiary basis for a jury to conclude that the defendants committed a predicate act that renders them liable to Gregory under I.C. § 34-24-3-1.  The evidence might even be sufficient to sustain his claim for treble damages.  But this evidence is not sufficient to hold the defendants liable as a matter of law at the summary judgment stage.  The court concludes that the issue of whether Coral and

Rex are liable to Gregory can only be resolved by a weighing of the evidence and, more importantly, by credibility determinations.  It would be improper for the court either to weigh the evidence in this case or attempt to resolve credibility disputes.  If a jury is convinced by Gregory's evidence that Coral and Rex intentionally converted the ING Annuity or any other Trust property, then they could find in favor of Gregory and award him damages supported by the evidence (including, as discussed, treble damages and attorney's fees).  If, on the other hand, the jury finds that the defendants' evidence (including their own testimony) supports their position that any failure to distribute the ING Annuity proceeds or other Trust distributions to Gregory was simply the result of mistake and confusion on their part, then a jury may reasonably find that no predicate act occurred that would result to liability under I.C. § 34-24-3-1.  Credibility determinations and the weighing of evidence are quintessential jury questions and cannot (and should not) be resolved on summary judgment.  *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511.  As a result, Gregory's motion for summary judgment as to liability is denied insofar as he seeks judgment as a matter of law against the defendants based on his claims pursuant to I.C. § 34-24-3-1.

**II.  Defendants' Motion for Summary Judgment.**

**A.  Statute of Limitations.**

As stated previously, the defendants argue in their motion for summary judgment that all of the plaintiff's claims against them are barred as a matter of law.  First, the defendants argue that Gregory's claims for treble damages and attorney's fees related to the ING Annuity funds are barred since his share was eventually paid with interest.  Since that issue has been resolved, the remaining issues raised by the defendants' motion for summary judgment are: 1) whether the

plaintiff's claims relating to the $10,000 gift and the 1/8 share of the $40,000 returned to Donald

Miller are barred by the applicable statute of limitations; and 2) whether his claims are legally

insufficient, for reasons other than the statute of limitations, to survive a motion for summary

judgment.

Coral and Rex argue that Gregory's claims for conversion, fraud and breach of fiduciary

duty as they pertain to the $10,000.00 gift as well as his 1/8 share of the $40,000 of insurance

money are both barred by a two-year statute of limitations.  Rex Miller and Coral Laun's

Memorandum in Support of Motion for Summary Judgment ("Defendants' Memorandum in

Support"), Docket at 44, p. 11.[7]  The defendants state their argument as follows:

> In addition to the claims relative to the ING Annuity, Gregory has asserted claims
> for conversion and breach of fiduciary duty based upon the $10,000.00 gift
> offered to Gregory on October 30, 2001, and based upon Gregory's 1/8 share of
> the $40,000 returned to Donald Miller in approximately December 2000. . . .
> However, a claim for breach [of] fiduciary duty is a tort claim for injury to
> personal property and, therefore, the statute of limitations is two (2) years. . . . A
> claim for conversion is also governed by a two (2) year statute of limitations.

*Id*. (citations omitted).  The defendants argue that "[w]ith respect to Gregory's claim for the

$10,000.00 gift offered in October 2001, the claim was not brought for a period of nearly five (5)

years.  The undisputed evidence indicates that Gregory received the October 2001 letter and

even asserted his initial claim regarding the $10,000.00 gift in May 2002."  *Id*., pp. 11-12.  The

defendants further argue:

> Gregory's claim regarding his alleged 1/8 interest in the $40,000 returned to
> Donald Miller in approximately December 2000 suffers the same fate.  The
> undisputed evidence indicates that Wagenblast provided Gregory and his counsel
> with a letter on August 23, 2002.  The letter was accompanied by an August 12,

---

[7] The defendants do not raise a statute of limitations argument with respect to Gregory's claim for treble damages and attorney's fees relating to the ING Annuity funds.

22

2002 accounting of the Trust activity.  The accounting clearly disclosed that the $40,000 originally transferred to Wagenblast as the trustee in August 2000 was subsequently returned to Donald Miller to help pay for his medical expenses. With the information contained in the August 2002 Trust accounting, Gregory knew or should have known about his claims for breach of fiduciary duty and/or conversion as they relate to his 1/8 share of the $40,000.  Therefore, any such claims became barred by the applicable statute of limitations on or around August 23, 2004.  It was not until the filing of the Pre-Trial Order in this action in June 2007 that Gregory even asserted any claim regarding his 1/8 share of the $40,000.[8]

*Id.*  Therefore, Coral and Rex seek summary judgment as to Gregory's claims regarding the

$10,000 gift offered in 2001 and the $5,000 share of the insurance money returned to Donald

Miller in 2000 based on their argument that these claims are time barred.

In response, Gregory argues as follows:

[T]he limitation period for breach of fiduciary duty should begin to run on September 14, 2005, with the filing of the verified accounting which identified the money as trust money, or on March 22, 2007, when counsel for the defendants, through a discovery response, provided plaintiff a copy of a client letter wherein he discusses a possible $40,000 claim ($5,000 of which belonged to Greg Laun) against the estate of Donald Miller by the Trust, which possible right of action was never disclosed to the beneficiaries, or on March 29, 2007, when counsel for the defendants admitted in his deposition, contrary to numerous earlier written representations to Greg Laun, that the subject money was in fact Trust money.  These dates are well within the two year period for bringing a claim for breach of fiduciary duty or for conversion of Trust money, and well within the 6 year period of limitations for fraud actions. . . .

Additionally, the concealment of the fraud, the conversion, and the breach of trust necessarily tolls the time for filing under Ind. Code § 34-11-5-1 which provides: "If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action."

---

[8]   Coral and Rex insist that "Gregory's original Complaint contained no allegations regarding the $40,000 returned to Donald Miller.  The allegations first appeared in the Pre-Trial Order."  *Id.*, p. 12, n. 2.

Plaintiff's Legal Memorandum in Opposition to Motion of Defendants Coral L. Laun and Rex A. Miller for Partial Summary Judgment ("Plaintiff's Response in Opposition"), Docket at 50, p. 21.

Resolution of the issue of the statute of limitations obviously involves determining what Gregory knew about the $10,000 gift and the 1/8 share of the $40,000 returned to Donald Miller, and when he knew it.  For example, Gregory does not contend that he never received the letter of October 2001 explaining the $10,000 gift and the terms associated with collecting it.  However, he does dispute the defendants' contention that the date of his receipt of that letter should be the starting point for calculating the statute of limitations applicable to his claim.  In the first place, as Gregory points out, one of the claims asserted in his Complaint is a claim of fraud.  The defendants do not dispute that pursuant to Indiana law, a civil action for fraud carries a six-year rather than a two-year statute of limitations.  So, even assuming that Gregory's receipt of the October 2001 letter started the clock running, his claim that Coral and Rex committed fraud by not paying him the $10,000 or the $5,000 would not be barred by a limitations period since this lawsuit was filed in 2006 (within six years of the alleged acts).

The defendants maintain that Gregory made an unequivocal demand for the $10,000 in May of 2002.  Defendants' Memorandum in Support, p. 12.  This "demand" refers to a letter dated May 2, 2002, in which Gregory's counsel at the time, William Herbach, informed the defendants that he was representing Gregory with respect to his claim for the $10,000 gift.  *Id.*, p. 7.  This is supported by statements made in the letter Wagenblast sent to Gregory on August 23, 2002.  *Id.*, Exhibit G.  In that letter, Wagenblast indicated that he was providing "a summary

accounting" concerning the Trust even though he also indicates he previously had done so a couple of weeks earlier. *Id*. Wagenblast's letter also makes reference to "Mr. [Gregory] Laun's claim for the $10,000." *Id*. Wagenblast also states that "[it] is the position of the co-executors of the Estate that the 'conditions' placed on the gift . . . were reasonable and that, since Mr. J. Gregory Laun did not so comply with the conditions, he has not now, nor ever had, a vested interest in the offered conditional gift.  Thus, they deny that any money is owed from the Estate to Mr. J. Gregory Laun." *Id*.

The defendants contend that as of the date of that letter, Gregory knew or reasonably should have known that Coral and Rex were taking the position that he was not owed $10,000, which in turn would put him on notice that he might have to pursue payment of that amount by initiating a lawsuit.  In that event, the statute of limitations period for conversion and for breach of fiduciary duty began to run on August 23, 2002, (or, arguably, a few days later when Gregory received the letter) and expired on or about August 23, 2004.  This might be true if it was uncontested that the money used to pay the $10,000 gifts came from Donald Miller's personal funds as opposed to funds held in the Trust.  The defendants present evidence that this was, in fact, the case.  This evidence includes copies of the checks written to the other seven recipients of the October 30, 2001 letter.  *Id*., Exhibit F.  These checks were drawn on an account in the names "Donald W. Miller," "Coral L. Laun," and "Rex A. Miller."  *Id*.  The defendants contend that this was a personal account belonging to Donald Miller as opposed to a Trust account, which in turn indicates that the $10,000 gift was unrelated to the Trust.  Therefore, according to the defendants, Gregory's assertion that the statute of limitations with regard to this gift should not begin to run until September 15, 2005, the date of the verified accounting of the Trust, is

misplaced.  One of the major problems with this argument is that the October 30, 2001, letter states–or at the very least implies–that the money being offered was property of the Trust.  First, the letter states that Donald Miller's "trust is in a position to" gift funds to the recipients. Second, as Gregory has pointed out, Coral and Rex refer to themselves as "co-trustees of [the] trust" in the letter.  Third, the letter states that the recipients should "arrange this visitation, if at all possible, before December 31, 2001, since tax issues may effect [sic] his trust's ability to grant additional gifts next year.  *Id.*, Exhibit E.

The court concludes that a fact issue exists as to whether the $10,000 gift offered to Gregory was or was not Trust property.  If it was, then a jury could find that Gregory did not become aware of his  claims for conversion and/or breach of fiduciary duty regarding that gift until he received the verified accounting of the Trust in September 2005.  In that event, his claims would not be barred by a two-year statute of limitations.  This factual dispute precludes summary judgment in favor of the defendants.

As for Gregory's claims involving his 1/8 share of the $40,000 returned to Donald Miller for the alleged purpose of helping to pay medical bills and expenses, the analysis is much the same.  The defendants contend that in his letter of August 23, 2002, Wagenblast provided Gregory and his counsel with "an August 12, 2002 accounting of the Trust activity" and that this "accounting clearly disclosed that the $40,000.00 originally transferred to Wagenblast as the trustee in August 2000 was subsequently returned to Donald Miller to help pay for his medical expenses.  With the information contained in the August 2002 Trust accounting, Gregory knew or should have known about his claims for breach of fiduciary duty and/or conversion as they relate to his 1/8 share of the $40,000.00."  *Id.*, p. 12.

26

Gregory counters by arguing that the August 2002 date on which the defendants hang their hats is simply the wrong date from which to begin calculating a two-year statute of limitations.  Gregory argues that the "accounting" that accompanied Wagenblast's letter was actually just a summary prepared by Wagenblast rather than an actual, formal accounting. Plaintiff's Response in Opposition, p. 7.  In fact, as Gregory points out, this document was titled "General Summary of Donald Miller Family Trust Activity."  Defendants' Memorandum in Support, Exhibit H.  Gregory adamantly maintains that the date of the *verified* accounting, September 14, 2005, is a more reasonable date from which to calculate any statute of limitations. Plaintiff's Response in Opposition, p. 21.  He also points out that the September 2005 verified accounting referred to the money transferred from Donald Miller to Wagenblast as Trust property.  Plaintiff's Response in Opposition, p. 21.  Finally, Gregory argues that it was not until March 22, 2007, "when [Wagenblast], through a discovery response, provided plaintiff a copy of a client letter wherein he discusses a possible $40,000 claim ($5,000 of which belong to Greg Laun) against the estate of Donald Miller by the Trust, which possible cause of action was never disclosed to the [Trust] beneficiaries."  *Id.*  Gregory is referring to a letter from Wagenblast to the defendants, dated August 24, 2002, in which he discusses in detail the $40,000 and the possibility that the Trust beneficiaries could assert claims that this money was Trust property subject to disbursement to the beneficiaries in equal shares.  *Id.*, Exhibit 1, Deposition of Scott Wagenblast, Letter of August 24, 2002.  Since Gregory did not receive this letter until March 2007 during the discovery process in this case, he argues that the two-year statute of limitations for conversion and breach of fiduciary duty did not begin to run until that date.[9]

---

[9] The court discusses this letter from Wagenblast in greater detail below.

There are several material fact issues in this case that preclude the granting of summary judgment in favor of the defendants on the issue of the statute of limitations.  A jury could reasonably conclude that Gregory knew or should have known that he had a cause of action relating to the $10,000 gift and/or his 1/8 share of the $40,000 as early as 2002.  On the other hand, the jury could also agree that Gregory did not acquire the requisite knowledge until late in 2005 when the verified accounting of the Trust was prepared, or in early 2007 when he received certain documents during discovery that confirmed (according to him) his belief that the defendants had committed conversion or breach of fiduciary duty.  Accordingly, the defendants' motion for summary judgment on the issue of the statute of limitations is denied.

**B.  Insufficiency of Plaintiff's Claims as a Matter of Law.**

Finally, the defendants contend that they are entitled to summary judgment on all of Gregory's claims because the evidence fails to support his allegations that the defendants committed conversion, breach of fiduciary duty and/or fraud.  As discussed above, the defendants claim that certain of their acts with respect to the management of the Trust, even assuming they were in error, were the result of mistake and confusion rather than any conscious attempt to convert funds, breach their duties as trustees, or commit fraud.  Not surprisingly, the defendants' arguments in support of their motion are the mirror image of those made by the plaintiff in support of his own motion.  The court denied the plaintiff's motion for summary judgment on the issue of liability (with the exception of the issue of treble damages and attorney's fees) because the evidence in the record as it stands currently presents many genuine issues of material fact, including issues of credibility.  The evidence and argument presented by the defendants in their motion does not change this situation.

28

The defendants claim, for example, that Coral and Rex were "mistaken and confused" when the referred to themselves as co-trustees of the Trust in the October 2001 letter regarding the $10,000 gift when in actuality they were functioning as attorneys-in-fact for Donald Miller at that time. Defendant's Memorandum in Support, p. 13. They argue that pursuant to their power as attorneys-in-fact, they were permitted to make personal gifts on behalf of Donald Miller from his personal account. *Id.*, p. 14. They point out that Wagenblast "informed Gregory and his counsel in August 2002 that Miller and Coral were acting as powers of attorney and not trustees in offering the gift." *Id.* Therefore, the defendants "submit that the only conceivable misrepresentation [regarding the $10,000 gift] would be their mistakenly identifying themselves as the co-trustees when they were actually acting pursuant to their authority as power of attorney. However, such a statement cannot serve as the basis for actual fraud as the statement was not made with knowledge or reckless ignorance of the falseness [sic]." *Id.* Finally, Coral and Rex argue that "the fact that they identified themselves as trustees rather than powers of attorney did not proximately cause any injury to Gregory[.]" and consequently he cannot sustain "any claim for actual fraud or constructive fraud as it relates to the $10,000." *Id.*

Gregory argues in response that the issue of fraud involves more than this one incident of misrepresentation or mistake regarding the proper title or authority under which Coral and Rex were operating when they sent out the October 2001 letter. He claims that he was entitled to the $10,000 gift; that Coral and Rex, rather than paying the money to Gregory, allowed  it to remain a part of Donald Miller's estate; and that as a consequence the money was ultimately divided between Coral and Rex themselves, since they were the sole beneficiaries under Donald Miller's will. Plaintiff's Response in Opposition, p. 22. Gregory's position is that the fact that Coral and

Rex referred to themselves as co-trustees in their October 2001 letter is not the determinative factor, but simply one of several examples of fraud and misrepresentation by the defendants.

If this evidence and argument is considered in a light most favorable to Gregory, the court concludes that a genuine issue of fact is presented regarding the defendants' actions as they related to the $10,000. Once again, the ultimate resolution of this issue will be based largely on issues of credibility, rendering it inappropriate for resolution by the court on the present motion for summary judgment.

Regarding Gregory's claim to a 1/8 share of the $40,000 insurance money based on the defendants' alleged fraud, the defendants argue that the evidence is insufficient to establish even a genuine issue of fact. First, the defendants point out that "[t]he Complaint filed by Gregory in this matter fails to include any reference whatsoever to the return of the $40,000 to Donald Miller as a basis for a claim at all, let alone a claim for fraud." Defendants' Memorandum in Support, p. 14. Furthermore, the defendants argue that they did not even make the decision to return the $40,000 to Donald Miller, the decision having been made by Wagenblast in his capacity as trustee of the Trust at that time. *Id*. The defendants also state that Gregory was informed, by way of "the August 12, 2002 summary accounting forwarded by Wagenblast to Gregory and his counsel on August 23, 2002, Gregory was specifically informed of the fact that the $40,000 was returned to Donald Miller. This was the only representation regarding the $40,000. There is no evidence that any misrepresentations of past or existing facts were made to Gregory as it relates to the return of the $40,000." *Id*., p. 15.

Gregory responds by arguing that there is evidence to contradict the defendants' position. For example, he states that Wagenblast, in his deposition, stated that the $40,000 that remained

out of the original $80,000.00 amount Donald Miller had transferred in 2000 was property of the Donald Miller Family Trust.  Plaintiff's Response in Opposition, p. 8, (citing Exhibit 1, Deposition of Scott Wagenblast, pp. 40-41).  In addition, Gregory points out that in his letter dated August 24, 2002, sent to Coral and Rex, Wagenblast specifically addresses the issue of the $40,000 and expressly acknowledges therein that a claim to the funds may exist.  *Id.* (exhibit to Deposition of Scott Wagenblast).  In that letter, Wagenblast wrote as follows:

> With regard to the issues of claims that the Trust may have against the Estate for the monies deposited in 2000 and then partially returned to Don for use by you of payment of medical expenses, it is my understanding that, as co-executors and joint beneficiaries of the Estate, you do not, in your capacity now as joint-trustees of the Trust, wish to make such a claim against the Estate in the base amount of $40,000.  I do not disagree with this position, but caution you that it is possible a claim may exist.  Therefore, if a claim is later made relevant to such an issue by any beneficiary of the Trust, it is possible that you would be responsible for such monies due.
> . . .
>
> If you recall, the amount returned to Don in December 2000 was $40,000.  This was 50% of the amounts made available, if needed, to the Life Insurance Policy.  A determination was later made that, due to Don's deteriorating health and the lack of further need to fund, at that time, the Life Insurance Policy, there would be no advantage to forwarding money to the Life Insurance Policy.  As such, the three of us agreed to return it to Don to pay ongoing medical expenses.
> . . .
>
> There is a legitimate argument that the money was never formally transferred to the Trust because it remained in the Law Office Trust account and was never re-directed by me, at the time Trustee of the Trust, to any separate asset or account of the Trust.
> . . .
>
> However, in the "worst-case" scenario, if a claim that such money was an asset of the Trust is successful, you, as beneficiaries of the Estate, may be required to return the $40,000 base money from money distributed to the two of you pursuant to the Will, for re-direction under the trust to the listed eight beneficiaries ($5,000 each).

*Id.*  Gregory argues that this is compelling evidence that the $40,000 was property of the Trust,

or at least was intended as such, and should have been divided equally between the eight

beneficiaries.  Instead, the money ended up as part of Donald Miller's estate and was

subsequently distributed to Coral and Rex–the two sole heirs under Donald Miller's will–in

equal shares.[10]

Also, Gregory points out that in his deposition, Wagenblast testified that he did not think

that copies of this letter were sent to the Trust beneficiaries and that he had no explanation as to

why it was not.  *Id*., p. 9.

Finally, Gregory notes that "[i]n the September 15, 2005 verified accounting prepared by

the defendants, they treat the $40,000 as Trust money, which is not consistent with their

discussions with Mr. Wagenblast to treat that as estate money."  *Id*., p. 10; *see* Plaintiff's

Memorandum in Support of Motion for Summary Judgment as to Liability, Docket at 47, Exh. 5

(verified accounting of Donald Miller Family Trust).[11]

These factual disputes–like most of the disputes in this case–are quintessential jury

questions.  The facts are material to the plaintiff's claims and the defendants' defenses, and most

of them involve credibility determinations.  The defendants' motion for summary judgment as to

---

[10]  As Gregory points out, Coral and Rex were not only the sole heirs under Donald
Miller's will, they were co-trustees of the Trust and co-executors of Donald's estate.  Gregory
makes this point several times in his briefs, arguing that conflicts of interest resulted from the
defendants serving in these various capacities thereby bolstering his claims for conversion,
breach of fiduciary duty and fraud.

[11]  The defendants' argument that Gregory cannot sustain a claim of fraud against them
since it was Wagenblast, and not the defendants themselves, who returned the $40,000 to Donald
Miller, rings rather hollow in light of Wagenblast's letter, which specifically states that "the
three of us agreed to return it to Don . . . ."  At the very least, this raises yet another fact
issue–and probably another credibility issue also–in a case already replete with genuine issues
that need to be resolved by a jury.

Gregory's claims to the $10,000 gift and the 1/8 share of the $40,000 will be denied.

## CONCLUSION

For the reasons set forth herein, the motion for summary judgment as to liability filed by J. Gregory Laun is GRANTED in part and DENIED in part, and the motion for summary judgment filed by Coral Laun and Rex Miller is DENIED.

Date: January 9, 2008.

        /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana